UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JAMES VARNEY,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     No. 1:10CV62 RWS
                                 )              (FRB)
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,              )
                                 )
          Defendant.             )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the Court on appeal of an adverse ruling of the Social Security Administration. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

**I.  Procedural History**

On January 10, 2007, plaintiff James Varney filed an application for Supplemental Security Income pursuant to Title XVI, 42 U.S.C. §§ 1381, et seq., in which he claimed he became disabled on August 23, 2006. (Tr. 129-32.)[1] On initial consideration, the Social Security Administration denied plaintiff's claim for

---

[1]Plaintiff previously filed applications for Supplemental Security Income and Disability Insurance Benefits, which were denied by the Social Security Administration in October 2005. On August 14, 2006, an Administrative Law Judge (ALJ) denied plaintiff's claims for benefits and, on November 9, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 32-45, 79-82.) In the instant cause of action, plaintiff does not seek to reopen his previously filed applications and/or the decisions relating thereto.

benefits. (Tr. 86-90.) On May 21, 2008, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 17-31.) Plaintiff testified and was represented by counsel. On July 16, 2008, the ALJ issued a decision denying plaintiff's claim for benefits. (Tr. 5-16.) On March 11, 2010, after review of additional evidence, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-4.) The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

At the hearing on May 21, 2008, plaintiff testified in response to questions posed by counsel. At the time of the hearing, plaintiff was forty-two years of age. (Tr. 20.) Plaintiff is married and has three children, ages seventeen, nineteen and twenty-one. (Tr. 30.) Plaintiff attended high school until the ninth grade. Plaintiff can read and write, and is capable of adding and subtracting. (Tr. 20.)

From 1985 to 1988, plaintiff worked as a laborer performing telephone installation. From 1993 to 1996, plaintiff worked as a laborer at an oil mill. From June 1999 to June 2000, plaintiff worked at a salvage yard dismantling auto parts. (Tr. 183.) Plaintiff testified that he has been unable to work since 2000 because of numbness in his hands, leg and lower back. Plaintiff testified that his condition has worsened since he last applied for disability benefits inasmuch as he currently has

diabetes, uncontrolled hypertension, and worsening symptoms in his back causing numbness in his legs and needle-like sensations in his feet. (Tr. 20-21.)

Plaintiff testified that he suffers from degenerative disease in the spine but has had no surgery. Plaintiff testified that his physician recommended either medication or injections for the condition, and that he chose medication. Plaintiff testified that he takes pain medication throughout the day but without improvement. Plaintiff testified that he is no longer productive because of the pain. (Tr. 21-23.)

Plaintiff testified that he was recently diagnosed with diabetes and was given medication for the condition. Plaintiff testified that his doctor considers the condition to be controlled, but that it appears to be uncontrolled when he checks his levels at home. (Tr. 24.) Plaintiff testified that the condition causes him to feel faint. (Tr. 26.)

Plaintiff testified that he also suffers from anxiety and depression and that his thoughts are affected thereby. Plaintiff testified that, in crowds, he feels as though everyone is watching him or that someone will stab him. Plaintiff testified that he used to see a psychiatrist for the condition, but that the psychiatrist scared him and gave him medication that made him feel drunk. Plaintiff testified that he stopped seeing the psychiatrist about one year prior. (Tr. 25.) Plaintiff testified that he

currently takes Xanax and Seroquel as prescribed by his primary physician, and that the medication helps his condition. (Tr. 26.)

Plaintiff testified that family and friends come to visit him at his home. Plaintiff testified that they come to his home in part because of his unease in going out and because he has a comfortable chair at home. (Tr. 27.)

As to his exertional abilities, plaintiff testified that a grinding sensation in his back limits his walking to about one block, and then his legs go numb and he begins to feel needle-like sensations. Plaintiff testified that he also has difficulty finding a comfortable sitting position. (Tr. 21-23.) Plaintiff testified that lifting weight such as a gallon of milk causes pain in his back, but that the pain is lessened if he holds the weight against his body. (Tr. 28.) Plaintiff testified that he can prepare simple meals for himself but cannot cook because of his back condition and resulting numbness in his legs. (Tr. 30.)

### III. Medical Records[2]

In a Medical History form completed for Southeast Missouri Health Network on August 28, 2002, plaintiff reported that he suffered from high blood pressure, heart problems and stomach ulcers. Plaintiff also reported that for several years, he has had a rash on his hands, experienced diarrhea three times a day, and experienced back pain and stomach pain. (Tr. 242-43.) Upon examination by family nurse practitioner J. Hoggard that same date, plaintiff reported that he experienced diarrhea with stress and had been treated for gastroenteritis. Plaintiff was noted to be anxious. Plaintiff reported that he had taken Xanax,[3] Prilosec,[4] Donnatal,[5] and Remeron[6] in the past. Physical examination showed

_____

[2]Additional evidence which was not before the ALJ was submitted to and considered by the Appeals Council. This evidence consists of treatment notes dated October 13, 2008, to July 8, 2009, from Pemiscot Primary Care Center; and treatment notes dated November 11, 2008, to July 10, 2009, from Dr. Timothy W. McPherson. (Tr. 538-50, 552-79.) The Court must consider these records in determining whether the ALJ's decision was supported by substantial evidence. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). For the sake of continuity, discussion of these records is incorporated with that of the records before the ALJ at the time of his decision.

[3]Xanax (Alprazolam) is used to treat anxiety disorders and panic disorder. Medline Plus (last revised Nov. 1, 2010) <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html>.

[4]Prilosec is used to treat gastroesophageal reflux disease (GERD). Medline Plus (last revised May 16, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693050.html>.

[5]Donnatal is used to relieve cramping pains in conditions such as irritable bowel syndrome (IBS). Medline Plus (last revised Aug. 01, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601024.

generalized pain about the abdomen. Plaintiff was diagnosed with hypertension, abdominal pain, irritable bowel syndrome (IBS), and anxiety. Nurse Hoggard ordered laboratory tests and prescribed Hytrin,[7] Bentyl[8] and Prilosec for plaintiff. (Tr. 240-41.)

Plaintiff returned to Nurse Hoggard on September 11, 2002, and complained of lower abdominal and lower back pain. Plaintiff also complained of lesions to his right hand, left leg and abdomen. Plaintiff reported difficulty with urination. Physical examination showed pain in the lower quadrants of the abdomen, rash on the hands and legs, coated tongue, enlarged lymph nodes, and enlarged and tender prostate. Plaintiff was prescribed Cipro (an antibiotic) and Ultracet,[9] and was instructed to increase his dosage of Hytrin. Additional laboratory testing was ordered. Plaintiff was instructed to return in one week. (Tr. 239.)

_____

html>.

[6]Remeron is used to treat depression. Medline Plus (last reviewed Sept. 1, 2008)<http://www.nlm.nih.gov/medlineplus/ druginfo/meds/a697009.html>.

[7]Hytrin is used to treat high blood pressure as well as symptoms of an enlarged prostate. Medline Plus (last reviewed Sept. 1, 2008)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/ a693046.html>.

[8]Bentyl is used to the treat the symptoms of IBS. Medline Plus (last revised Aug. 1, 2010)<http://www.nlm.nih.gov/ medlineplus/druginfo/meds/a684007.html>.

[9]Ultracet (Tramadol) is used to relieve moderate to moderately severe pain. Medline Plus (last reviewed Feb. 1, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.ht ml>.

On September 18, 2002, plaintiff reported to Nurse Hoggard that he was doing much better with urination, but was very anxious. Nurse Hoggard noted plaintiff to be rambling in his speech and to be twisting his hands. Plaintiff reported that medication helped his rash. Plaintiff was diagnosed with anxiety disorder, benign prostatic hyperplasia (BPH) and herpes simplex virus (HSV). Plaintiff was prescribed Xanax and Effexor,[10] and his prescription for Hytrin was refilled. Plaintiff was referred to Family Counseling Center (FCC) and dermatology. (Tr. 238.)

On October 1, 2002, plaintiff reported to Nurse Hoggard that Effexor caused him to itch and to have pain in his chest. Nurse Hoggard noted plaintiff to continue to wring his hands. Plaintiff was diagnosed with anxiety. Plaintiff was instructed to continue with Xanax and Hytrin. Keflex (an antibiotic) was prescribed. (Tr. 237.)

On February 15, 2003, plaintiff went to the emergency room at Twin Rivers Regional Medical Center with complaints of pain in his neck between the shoulder blades, pain in the mid to lower back radiating to his right leg, and numbness in his toes. Plaintiff reported that he was involved in a motor vehicle accident seven days prior. Plaintiff's current medications were noted to

---

[10]Effexor is used to treat depression, generalized anxiety disorder, social anxiety disorder, and panic disorder. Medline Plus (last revised Mar. 1, 2009)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694020.html>.

include Xanax, Zantac,[11] Zyprexa,[12] and Flomax.[13]   Plaintiff's history of anxiety and prostatitis was noted.  Physical examination showed tenderness about the cervical, lumbar and thoracic spine.  Grip strength was noted to be reduced.  Straight leg raising was positive bilaterally.  X-rays of the cervical spine showed the vertebrae, disc space and alignment to appear normal.  Plaintiff was given Toradol[14] and Norflex.[15]  Upon discharge, plaintiff was diagnosed with muscle strain with neuropathy, and was prescribed Robaxin[16] and Ultram.[17]  (Tr. 270-74.)

---

[11]Zantac (Ranitidine) is used to treat ulcers and GERD. Medline Plus (last reviewed Feb. 1, 2009)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601106.html>.

[12]Zyprexa is used to treat the symptoms of schizophrenia and bipolar disorder.  Medline Plus (last revised May 16, 2011) <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601213.html>.

[13]Flomax is used to treat the symptoms of BPH.  Medline Plus (last revised July 15, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698012.html>.

[14]Toradol is used to relieve moderately severe pain.  Medline Plus (last revised Oct. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693001.html>.

[15]Norflex is used to relieve pain and discomfort caused by strains, sprains and other muscle injuries.  Medline Plus (last revised Dec. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682162.html>.

[16]Robaxin (Methocarbamol) is used to relax muscles and relieve pain and discomfort caused by strains, sprains and other muscle injuries.  Medline Plus (last revised Oct. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682579.html>.

[17]Tramadol is marketed under the name Ultram.  See Medline Plus (last reviewed Feb. 1, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html>.

Plaintiff visited Dr. David Diffine at Doctors Inn Clinics on February 28, 2003, and complained of pain in his back and between his shoulder blades. Plaintiff also reported having a rash on his back. Physical examination showed plaintiff to have pain upon range of motion of his neck and back. Plaintiff was noted to have appropriate affect and demeanor. Dr. Diffine diagnosed plaintiff with neck pain and cellulitis of the wrist. Plaintiff was prescribed Ultracet, Soma[18] and Keflex. An MRI of the spinal canal of the cervical spine was ordered. (Tr. 244-45.)

Plaintiff visited Dr. Lance E. Monroe at Paragould Doctors' Clinic on September 9, 2004, who noted plaintiff to be doing well. Plaintiff reported his mental condition to have been stable and that his pain was under control with his present treatment. Plaintiff was counseled regarding overuse of medications and possible addiction with long term use of narcotics. Dr. Monroe noted plaintiff's medical history to include migraines, anxiety/depression and hypertension. Physical examination showed pain and tenderness about the coccyx and findings of carpal tunnel in the right upper extremity. Plaintiff's station and gait were noted to be normal. Mental status examination showed no depression, anxiety or agitation. Dr. Monroe diagnosed plaintiff

---

[18]Soma is a muscle relaxant used to relax muscles and relieve pain and discomfort caused by strains, sprains and other muscle injuries. <u>Medline Plus</u> (last reviewed Aug. 1, 2010)<<u>http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682578.html</u>>.

with back pain, unchanged; gastritis, acute without hemorrhage, improved; anxiety, unchanged; and dermatitis, improved. Plaintiff was prescribed various medications, including Fluconazole,[19] Vicodin[20] and Alprazolam. Plaintiff was instructed to continue with his other medications which included Zantac, Hytrin and Naproxen.[21] (Tr. 331-35.)

Plaintiff returned to Dr. Monroe on October 7, 2004, and complained of continued back pain as well as anxiety. Physical examination showed pain and tenderness about the coccyx and pain with motion about the right knee. Carpal tunnel findings were made regarding plaintiff's right upper extremity. Mental status examination showed no depression, anxiety or agitation. Dr. Monroe continued to note plaintiff's mental condition to be stable. Plaintiff was diagnosed with glossitis, improved; carpal tunnel syndrome, unchanged; sciatica, unchanged; dermatitis, improved; anxiety, unchanged; gastritis, improved; and esophagitis, improved. Plaintiff was provided new prescriptions of Vicodin and Alprazolam and was instructed to continue with his other medications. (Tr.

---

[19]Fluconazole is used to treat fungal infections. Medline Plus (last revised Jan. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a690002.html>.

[20]Vicodin (Hydrocodone) is used to relieve moderate to severe pain. Medline Plus (last revised July 18, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html>.

[21]Naproxen is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis, rheumatoid arthritis and ankylosing spondylitis. Medline Plus (last revised May 16, 2011) <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html>.

328-31.)

Plaintiff visited Dr. Monroe on November 8, 2004, complaining of a cough. Physical examination was unchanged from the last visit. Medication was prescribed and plaintiff was instructed to continue with his previous medications. (Tr. 324-27.)

On December 9, 2004, plaintiff visited Dr. Monroe and complained of continued diarrhea, but with improvement in the condition. Plaintiff reported that he was having difficulty sleeping and wanted to discuss being placed back on Zyprexa. Physical examination yielded no new results. Plaintiff was diagnosed with back pain, unchanged; esophagitis, improved; anxiety, unchanged; coccygeal pain, unchanged; and enteritis, improved. Plaintiff's prescriptions for Vicodin and Alprazolam were refilled and plaintiff was instructed to continue with his other medications. Zyprexa was prescribed. (Tr. 321-24.)

From January through April 2005, plaintiff visited Dr. Monroe on four occasions for medication refills. Dr. Monroe noted on each occasion that plaintiff's mental condition was stable and that plaintiff's pain was under control with the present treatment. Physical examinations yielded unremarkable results, and plaintiff was continued on his medication regimen. (Tr. 307-20.)

Plaintiff was admitted to the emergency room at Twin Rivers Medical Center on February 18, 2005, with complaints of

sharp rib pain. Plaintiff's current medications were noted to include Alprazolam, Hytrin, Vicodin, and Zantac. X-rays taken of the ribs yielded negative results. Plaintiff was given Vicodin and Toradol and was discharged that same date in improved condition. Plaintiff was diagnosed with rib sublaxation and was prescribed Vicodin and Zithromax (an antibiotic) upon discharge. Plaintiff was instructed to follow up in seven days. (Tr. 247-57.)

Plaintiff visited Dr. Monroe on May 5, 2005, and complained of pain in his left side and lower back. Dr. Monroe continued to note that plaintiff's mental condition was stable and that plaintiff's pain was under control with the present treatment. Dr. Monroe continued in his diagnoses and instructed plaintiff to continue on his current medications. (Tr. 303-07.)

On June 2, 2005, plaintiff complained to Dr. Monroe that he had joint pain. Physical examination remained unchanged and plaintiff was instructed to continue on his current medications. Plaintiff was also diagnosed with urinary tract infection and additional medication was prescribed. (Tr. 301-04.)

On June 30, 2005, plaintiff complained to Dr. Monroe that he had lower back pain, tingling in his right leg, and lower abdominal pain. Dr. Monroe continued to note that plaintiff's mental condition was stable and that plaintiff's pain was under control with the present treatment. Physical examination showed tenderness about the suprapubic area. Examination of the

musculoskeletal system showed no change from previous examinations. Dr. Monroe diagnosed plaintiff with back pain, unchanged; and urinary tract infection, deteriorated. Plaintiff's prescriptions of Cipro, Vicodin and Alprazolam were refilled, and plaintiff was instructed to continue on his other medications. (Tr. 298-301.)

Plaintiff returned to Dr. Monroe on July 28, 2005, and continued to complain of low back pain and pain in his left side. Plaintiff also complained of tightness between his shoulder blades. Dr. Monroe continued to diagnose back pain and instructed plaintiff to continue with his medications. (Tr. 294-97.)

An x-ray was taken of plaintiff's left foot on August 2, 2005, as a result of a crush injury. The x-ray showed no significant abnormality. (Tr. 282.)

On August 25, 2005, plaintiff complained to Dr. Monroe that he felt sore since riding a four-wheeler. Plaintiff also reported that he felt weak a lot and continued to experience diarrhea. Dr. Monroe noted plaintiff's mental condition to be stable and that plaintiff reported his pain to be under control with the present treatment. Dr. Monroe noted plaintiff to be cautious with his gait and station. Soreness was noted about the chest wall. Plaintiff was prescribed Flagyl and was instructed to continue with his other medications which included Alprazolam, Vicodin, Zantac, Zyprexa, and Hytrin. (Tr. 291-93.)

Plaintiff visited Dr. Monroe on September 13, 2005, and

complained of chest pains.  Plaintiff reported the pains to become more noticeable when he is anxious.  Physical examination showed suprapubic tenderness and chest wall soreness.  Dr. Monroe noted plaintiff to be cautious in his gait and station.  Mental status examination showed no depression, anxiety or agitation.  Dr. Monroe diagnosed plaintiff with back pain, unchanged; esophagitis reflux, unchanged; anxiety, unchanged; and urinary tract infection, deteriorated.  Dr. Monroe prescribed additional medications, refilled plaintiff's prescriptions for Vicodin and Alprazolam, and instructed plaintiff to continue on his other medications.  (Tr. 353-55.)

Plaintiff returned to Dr. Monroe on October 25, 2005, requesting refills of his medications.  Plaintiff also reported having abdominal pain, nausea, diarrhea, and a change in his bowel habits.  Physical examination showed plaintiff to be cautious in his gait and station.  Chest wall soreness was noted, as well as pain about the right knee with motion.  Carpal tunnel findings were also noted about the right upper extremity.  Mental status examination showed no depression, anxiety or agitation.  Dr. Monroe diagnosed plaintiff with back pain, unchanged; anxiety, unchanged; and dermatitis, deteriorated.  Plaintiff was prescribed Famvir[22] and was instructed to continue with his previous

---

[22]Famvir is used to treat various forms of the herpes virus. Medline Plus (last reviewed Sept. 1, 2008)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694038.html>.

medications. (Tr. 356-58.)

On November 10, 2005, plaintiff visited Barbara McGuire, a counselor at FCC, and reported that he experienced anxiety and depression. Plaintiff reported that he had been unable to work during the previous ten years due to medical problems and that he was seeking disability. Plaintiff reported having attempted suicide nineteen years prior. Counselor McGuire noted plaintiff's demeanor to be anxious and angry. Plaintiff's affect was appropriate, but he was noted to be depressed. Plaintiff was also noted to be guarded and in pain. Counselor McGuire noted that plaintiff's thought processes were "okay," with his attention and concentration noted to be attentive. Plaintiff's intellectual functioning was noted to be "okay," with abstract thinking noted to be poor. Plaintiff reported that he considered his problems to be mild. Plaintiff reported having low energy and that he had difficulty sleeping. Counselor McGuire diagnosed plaintiff with general anxiety disorder and assigned a Global Assessment of Functioning (GAF) score of 58. A treatment plan was developed with cognitive behavioral and medication therapy. (Tr. 386-97.)

Plaintiff visited Dr. Patrick J. LeCorps on November 15, 2005, for orthopedic evaluation regarding his complaints of low back pain radiating down the right leg to the right big toe. Plaintiff reported a history of falling out of an attic and off of a roof, and of being involved in a four-wheeler accident.

Plaintiff reported that he recently fell and sustained a fractured coccyx as diagnosed by his family doctor. It was noted that plaintiff had no diagnostic testing of the condition. Plaintiff reported his pain to be sporadic but to worsen with prolonged standing and walking. Plaintiff reported that he is unable to push, pull or lift inasmuch as such activities exacerbate the pain. Physical examination showed plaintiff unable to touch his toes due to pain and to have positive straight leg raising bilaterally. No other range of motion deficits were noted. X-rays showed possible spondylolysis at the L5 level on both sides, grade I spondylolisthesis between L5-S1, and degenerative disc disease. Dr. LeCorps suspected herniated disc at the L4-L5 or L5-S1 levels and recommended that plaintiff undergo an MRI. Dr. LeCorps diagnosed plaintiff with spondylolysis L5 bilateral, grade I spondylolisthesis L5-S1, and degenerative disc disease L5-S1; with herniated lumbar disc with lumbar radiculopathy at L4-L5 and L5-S1 to be ruled out. (Tr. 338-40.)

Plaintiff returned to Dr. Monroe on November 21, 2005, and reported that his psychologist advised him to speak to Dr. Monroe about Alprazolam. Plaintiff complained of experiencing anxiety. Plaintiff also reported the results of his examination with Dr. LeCorps and complained that he continued to have back pain as well as muscle spasms in his back and legs. Physical examination revealed no changes from the previous exam. Dr. Monroe

noted plaintiff's new problem to be muscle spasm. Plaintiff was prescribed Neurontin[23] and was given new prescriptions for Alprazolam, Vicodin and Hytrin. Plaintiff was instructed to continue with his medications as prescribed. (Tr. 360-62.)

Plaintiff returned to Counselor McGuire on December 5, 2005, who noted plaintiff to be tearful when discussing his inability to work. Plaintiff reported that going to church was helping him and his family a lot. Healthy coping skills were discussed. (Tr. 398.)

Plaintiff returned to Dr. Monroe on December 19, 2005, for medication refills. Plaintiff reported that Neurontin made him feel woozy and thought that it elevated his blood pressure. Plaintiff was noted to be anxious. Physical examination was unremarkable. Plaintiff was prescribed Methocarbamol for muscle spasm and back pain. Zyprexa was also added to plaintiff's medication regimen. Plaintiff was instructed to continue on his other medications as prescribed. (Tr. 364-67.)

On December 30, 2005, plaintiff reported to Counselor McGuire that he was in a lot of pain, and he expressed a desire to change doctors so that he could get help for his pain. Plaintiff reported the pain to cause his anxiety and depression. Plaintiff reported that he was doing better with his anxiety and depression

---

[23]Neurontin is used to relieve the pain of post-herpetic neuralgia. Medline Plus (last revised July 15, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html>.

and continued to take his medications, and that he believed that attending church helped his mental condition. (Tr. 399.)

On January 19, 2006, plaintiff visited Dr. Gustavo Granada and reported that he needed a new physician. Dr. Granada noted plaintiff's medical history to include chronic back pain, GERD, anxiety, bipolar disorder, dermatitis, and hypertension. Review of systems was unremarkable. Plaintiff reported no abnormalities with musculoskeletal or neurological functioning. Plaintiff reported that he was coping well with stress and had no history of long-term depression. Physical examination showed tenderness about the lumbar-sacral spine. Dr. Granada diagnosed plaintiff with chronic back pain and an MRI was scheduled. Plaintiff was prescribed Soma for the condition. Plaintiff was also diagnosed with thrush and dermatitis of the hands, and medications were prescribed. (Tr. 345-47.)

Plaintiff visited Counselor McGuire on January 24, 2006, who noted plaintiff's anxiety to be high. Plaintiff reported that he was unable to be around people, but that he continued to go to church because it helped him. Plaintiff reported continued problems with his back and that he was awaiting a transfer of medical records so that a new physician could prescribe pain medications. (Tr. 400.)

Plaintiff returned to Dr. Granada on January 31, 2006, and requested refills of his medications. Plaintiff reported that

he had been taking Lorcet[24] and Xanax, but Dr. Granada noted previous treatment notes to show that plaintiff did not need to take those medications although he was continuously prescribed them by his previous doctor. Plaintiff complained that he was experiencing a lot of back pain. Physical examination was unremarkable. Dr. Granada noted plaintiff to have full range of motion. Dr. Granada diagnosed plaintiff with history of chronic back pain and prescribed Darvocet.[25] Dr. Granada noted that results of MRI tests would show whether plaintiff needed any medication at all. Dr. Granada also diagnosed plaintiff with anxiety problems, and Cymbalta[26] was prescribed. (Tr. 348-49.)

Plaintiff visited Dr. Monroe on February 2, 2006, and continued to complain of back pain. Dr. Monroe refilled plaintiff's prescriptions, including prescriptions for Hytrin, Vicodin and Alprazolam. Physical examination showed no change from previous examinations. Plaintiff was noted to have normal mood and affect, with normal attention span and concentration. With respect

---

[24]Hydrocodone is marketed under the name Lorcet. _See_ _Medline_ _Plus_ (last revised July 18, 2011)<http://www.nlm.nih. gov/medlineplus/druginfo/meds/a601006.html>.

[25]Darvocet is used to relieve mild to moderate pain. _Medline_ _Plus_ (last revised Mar. 16, 2011)<http://www.nlm.nih.gov/ medlineplus/druginfo/meds/a601008.html>.

[26]Cymbalta is used to treat depression and generalized anxiety disorder, pain and tingling caused by diabetic neuropathy, fibromyalgia, low back pain, and osteoarthritis. _Medline_ _Plus_ (last revised Feb. 1, 2011)<http://www.nlm.nih.gov/medlineplus/ druginfo/meds/a604030.html>.

to his back pain, Dr. Monroe gave instruction to plaintiff regarding modified activities and strengthening/stretching exercises. Plaintiff was instructed to return in two weeks if there was no improvement. (Tr. 368-71.)

Plaintiff underwent an MRI of the lumbar spine on February 6, 2006, which showed degenerative disc disease of the L4-5 and L5-S1. No significant disc herniations were noted. (Tr. 350.)

Plaintiff returned to Dr. Monroe on February 22, 2006, and continued to complain of low back pain radiating down to his right foot. Plaintiff also reported having intermittent dizzy spells. Physical examination showed plaintiff to have back pain. Plaintiff's medications for Vicodin, Alprazolam and Lisinopril[27] were refilled. (Tr. 373-75.) Dr. Monroe denied plaintiff's request for a refill of Soma inasmuch as Dr. Granada was the prescribing physician. (Tr. 372-73.)

On February 23, 2006, Dr. Monroe's office referred plaintiff to Dr. Syed M. Nasir for evaluation of back pain and possible injections. (Tr. 372.)

Plaintiff visited Dr. A. Hussain, a urologist, on February 28, 2006, upon referral from Dr. Monroe. Dr. Hussain noted plaintiff's medical history to include hypertension and

---

[27]Lisinopril is used to treat high blood pressure. Medline Plus (last reviewed Feb. 1, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a692051.html>.

chronic pain medications addiction, with specific notation made to Vicodin and Soma. Upon examination, plaintiff was prescribed treatment and medication for prostatitis. Plaintiff received subsequent treatment for the condition in March and May 2006. (Tr. 383.)

Plaintiff returned to Counselor McGuire on February 28, 2006, who noted plaintiff to be in physical pain. Plaintiff reported to Counselor McGuire that he had been advised that he had four discs in his back that were "real bad," that he was scheduled for an MRI in March, and that he may have to undergo surgery. Plaintiff also reported that he had other health problems, including hypertension. Plaintiff reported that he cannot be around a lot of people, but that attending his small church helped him a lot. (Tr. 401.)

On March 9, 2006, plaintiff underwent a psychiatric evaluation at FCC. Plaintiff reported to Dr. Ali Abbas that he was physically and verbally abused as a child and had been feeling depressed for a number of years. Plaintiff reported having experienced anxiety since he was a child, but that he currently experienced the intensity of his anxiety once a day with such episodes including increased heart rate, dizziness, abdominal discomfort, sweating, and feeling jittery. Plaintiff also reported feeling short of breath, having numbness and tingling in his hands, and feeling that he is about to die. Plaintiff expressed that he

worries about having further anxiety symptoms. Plaintiff reported that crowds exacerbate his anxiety. Plaintiff reported that he currently took Zyprexa and Xanax as prescribed by his family physician, but that he did not believe them to help his condition. Plaintiff denied any suicidal, homicidal or psychotic symptoms. Mental status examination showed plaintiff to have intermittent eye contact and to rub his hands together and on his thighs. Dr. Abbas noted plaintiff to be anxious, but cooperative. No psychomotor agitation or retardation was noted. Plaintiff's speech was normal in rate, tone and volume. Dr. Abbas noted plaintiff's mood and affect to be dysphoric, anxious and constricted. Plaintiff was observed to be tearful when talking about his past issues. Dr. Abbas noted plaintiff's thought process to be linear and goal directed. Plaintiff denied having any hallucinations. Dr. Abbas diagnosed plaintiff with panic disorder with agoraphobia and depression, with avoidant personality disorder to be ruled out. Dr. Abbas assigned a GAF score of 65. Dr. Abbas concluded that plaintiff's psychotropic medications needed to be adjusted, and specifically that plaintiff discontinue Zyprexa and Xanax and begin

Celexa,[28] Ativan[29] and Trazodone[30] for insomnia. Plaintiff was instructed to continue with counseling and to return to Dr. Abbas in six to seven weeks. (Tr. 402-04.)

Plaintiff visited Dr. Monroe on March 22, 2006, and reported that his medication no longer worked for his back pain. Plaintiff complained of low back pain but reported that it did not radiate below the knees. Plaintiff reported that nothing exacerbated or relieved the pain. Dr. Monroe noted plaintiff's gait to be normal. Palpation revealed diffuse back tenderness with no spasm noted. Plaintiff was diagnosed with back pain and was prescribed Vicodin and Skelaxin.[31] Dr. Monroe noted plaintiff to no longer take Soma. Plaintiff's prescription for Alprazolam was also refilled. (Tr. 376-79.)

On April 18, 2006, plaintiff failed to appear for a scheduled appointment with Dr. Abbas. (Tr. 405.)

---

[28]Celexa is used to treat depression. Medline Plus (last revised Mar. 1, 2009)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html>.

[29]Ativan (Lorazepam) is used to relieve anxiety. Medline Plus (last revised Oct. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682053.html>.

[30]Trazodone is used to treat depression and is sometimes used to treat insomnia, schizophrenia and anxiety. Medline Plus (last revised Aug. 1, 2009)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html>.

[31]Skelaxin is a muscle relaxant used to relax muscles and relieve pain and discomfort caused by strains, sprains and other muscle injuries. Medline Plus (last reviewed Sept. 1, 2008) <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682010.html>.

Plaintiff visited Dr. Abbas on April 27, 2006, and reported that taking Vicodin made him feel "high," and that he wanted to change it. Plaintiff reported that he stopped taking Wellbutrin[32] because it made him feel hot. Plaintiff reported that he had been sleeping well with Trazodone. Plaintiff reported that Ativan seemed to help. Plaintiff reported that Dr. Monroe recently refilled his Xanax prescription, but that plaintiff never filled it at the pharmacy. Examination showed plaintiff to be less nervous. Plaintiff was cooperative and his affect was appropriate. Plaintiff's concentration and attention were noted to be intact, and plaintiff's insight and judgment were noted to be fair. Dr. Abbas continued in his previous diagnoses of plaintiff. Plaintiff was instructed to discontinue Wellbutrin. Remeron was prescribed. Plaintiff was instructed to continue with his other medications as prescribed but not to take Xanax while taking Ativan. Plaintiff was instructed to talk with his primary physician regarding the possibility of IBS. Plaintiff was instructed to return in seven weeks. (Tr. 406.)

Plaintiff visited Dr. Granada on June 19, 2006, and complained of symptoms associated with IBS. Plaintiff also reported that Vicodin was too strong for him. Dr. Granada determined to wean plaintiff from Vicodin and to try another strong

---

[32]Wellbutrin is used to treat depression. <u>Medline Plus</u> (last revised Oct. 1, 2009)<<u>http://www.nlm.nih.gov/medlineplus/druginfo/</u> meds/a695033.html>.

medication to control plaintiff's pain. Physical examination showed severe tenderness of the lumbar-sacral spine, but plaintiff was noted to have full range of motion and appropriate muscle strength. Plaintiff was prescribed Tylenol #3 and Soma for severe back pain, and Colace for his IBS symptoms. Plaintiff was instructed to return in one month. (Tr. 473-74.)

Plaintiff returned to Dr. Granada on July 19, 2006, with complaints regarding diarrhea. Plaintiff reported that Colace did not help his condition and he requested that he be referred to a specialist. Plaintiff also reported that Tylenol #3 did not help his back pain. Physical examination was unchanged from the previous visit. Vicodin and Soma were prescribed for plaintiff's severe back pain. Plaintiff was prescribed Lomotil for his diarrhea and was referred to Dr. Morrison for further evaluation. (Tr. 475-76.)

Plaintiff visited Dr. Granada on August 22, 2006, and requested refills of his medications. Plaintiff complained of continued pain in the thoracic spine and of continued diarrhea. Dr. Granada noted plaintiff to be cooperative and alert, to communicate well, and to make eye contact. Physical examination showed tenderness on the lumbar-sacral spine all the way up to T6. Muscle strength was noted to be appropriate and equal bilaterally. Plaintiff was noted to have full range of motion. Dr. Granada diagnosed plaintiff with chronic back pain, for which he refilled

plaintiff's prescriptions of Soma and Vicodin, noting the medication to help him "quite a lot" with the pain. Dr. Granada also diagnosed plaintiff with chronic diarrhea, for which plaintiff was referred to Dr. Ali. (Tr. 422-23.)

An MRI of the thoracic spine, taken on August 29, 2006, in response to plaintiff's complaints of back pain, showed mild posterior bulging disc at T6-7 level, mild degenerative arthritis, and degenerative disc disease of several of the thoracic discs. (Tr. 410.)

On September 22, 2006, Dr. Granada reported to plaintiff that MRI results showed him to have a bulging disc on T6-7, and that a colonoscopy showed him to have some polyps. Accu-check was noted to be 101. Physical examination was unchanged from the previous visit. Vicodin and Soma were refilled for plaintiff's severe back pain, and Zantac was refilled for his GERD. (Tr. 479-80.)

Plaintiff returned to Dr. Granada on October 23, 2006, and complained of having difficulty sleeping and of having some diarrhea. Physical examination continued to show severe tenderness on the lumbar-sacral spine. Plaintiff's prescriptions for Soma and Vicodin were refilled. Trazodone was prescribed for plaintiff's insomnia, and Lomotil was prescribed for plaintiff's chronic diarrhea and ileitis. (Tr. 419-20.)

On October 26, 2006, Dr. Hussain noted plaintiff to have

non-specific colitis and abacterial prostatitis. Treatment and medication were prescribed. (Tr. 408.)

Plaintiff returned to Dr. Granada on November 22, 2006, and complained of left lower quadrant pain, weight loss, and difficulty with sleep. Plaintiff reported that Trazodone was not helping him. Physical examination showed tenderness to palpation of the left lower quadrant. A CT scan of the abdomen was ordered and plaintiff was administered an injection of Toradol. Dr. Granada refilled plaintiff's prescriptions for Soma and Vicodin. Noting plaintiff to be vomiting a lot, Dr. Granada also prescribed Phenergen.[33] Lisinopril was prescribed for plaintiff's hypertension, and Seroquel[34] was prescribed for insomnia. It was noted that plaintiff was scheduled to see his specialist the following week. (Tr. 418.)

On November 27, 2006, Dr. Hussain noted plaintiff to have been denied disability. In addition to his previous diagnoses, Dr. Hussain noted plaintiff to have anxiety syndrome. Plaintiff was instructed to continue with his treatment and medication. (Tr. 408.)

A CT scan of the abdomen and pelvis, taken on November

---

[33]Phenergen is used to prevent and control nausea and vomiting. Medline Plus (last revised Jan. 1, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682284.html>.

[34]Seroquel is used to treat the symptoms of schizophrenia, bipolar disorder and depression. Medline Plus (last revised May 16, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019.html>.

29, 2006, in response to plaintiff's complaints of weight loss and lower abdominal pain, yielded normal results. (Tr. 412, 413.)

Plaintiff returned to Dr. Granada on December 21, 2006, for medication refills. Dr. Granada noted plaintiff to be fair. Physical examination showed tenderness along the lumbar-sacral spine. Plaintiff was instructed to continue with his medications. (Tr. 484-85.)

In a memorandum written December 21, 2006, Dr. Granada wrote that plaintiff "has hypertension, peptic ulcer disease, chronic insomnia, and degenerative disc disease L4-L5 and is taking multiple med[ications]. He needs to keep his Medicaid to afford his treatment." (Tr. 414.)

On January 22, 2007, plaintiff reported to Dr. Granada that he was doing "really good" but that he had been experiencing intermittent numbness in his right upper extremity and right lower extremity. Severe tenderness was noted about the lower back. Neurontin was prescribed for plaintiff's numbness, and plaintiff was instructed to continue on his other medications. (Tr. 486.)

Plaintiff visited Dr. Jyoti Kulkarni on February 21, 2007, and reported that he stepped on a rod with his right foot and had associated pain and swelling. Plaintiff also complained of low back pain which radiated down his left leg, but reported that medication diminishes the pain. Dr. Kulkarni diagnosed plaintiff with chronic back pain with radiculopathy, benign prostate

hypertrophy, hypertension, GERD, and anxiety. Plaintiff was prescribed Ultram, Soma and Lidoderm,[35] and was given refills on all other medications. (Tr. 487.)

On March 20, 2007, plaintiff underwent a consultative examination for disability determinations. Dr. Barry Burchett noted plaintiff's chief complaints to be prostatitis, colitis and low back pain. Plaintiff reported having constant suprapubic pain associated with his prostatitis, with such pain to ease throughout the day. Plaintiff reported having daily morning episodes of diarrhea and fluctuating weight gain/loss associated with his colitis. Plaintiff reported that he had recently obtained some relief from Acidophilus and Ranitidine. Plaintiff reported experiencing numbness in his fingers on his left hand with repetitive activity. Plaintiff reported that he has not had EMG testing, but that he obtains benefit from wearing splints on his wrists. With respect to his low back pain, plaintiff reported that the pain has been constant in the mid-lumbar region for the past eight years and that he experiences paresthesias in the right leg most of the time. Plaintiff reported the back pain to worsen with bending, lifting or riding in a car for a prolonged period. Plaintiff reported obtaining mild benefit from application of heat and from the use of Thera-Gesic ointment on his back. Plaintiff

---

[35]Lidoderm patches are used to relieve the pain of post-herpetic neuralgia. <u>Medline Plus</u> (last reviewed Sept. 1, 2008)<<u>http://www.nlm.nih.gov/medlineplus/druginfo/meds/a603026.html</u>>.

reported that he takes Soma and Tramadol, but that the Tramadol does not work as well as the Hydrocodone he used to take. Plaintiff also reported that he experiences stiffness in the right knee when riding in a car for a prolonged period. Finally, plaintiff reported that he recently began experiencing sharp chest pains twice a day, which were frequently accompanied by dizziness. Plaintiff reported the episodes to last five to ten minutes, and that the discomfort radiates to his left arm. Dr. Burchett noted plaintiff's medications to include Flomax, Acidophilus, Soma, Neurontin, HCTZ,[36] Ranitidine, Tramadol, and Seroquel. Physical examination showed generalized moderate tenderness throughout the abdomen. Examination of the dorsolumbar spine showed positive straight leg raising on the right, and plaintiff displayed significant limitation of voluntary lumbar flexion. Plaintiff also experienced limited range of motion with elevation and abduction of his shoulders, for reasons unknown. Sensory modality of light touch was diminished in the right lower extremity, including the foot to the thigh. Plaintiff walked without a limp and was able to squat. Examination of the remaining systems, including neurological, upper and lower extremities, hands, and the chest and head, yielded unremarkable results. Dr. Burchett diagnosed plaintiff with IBS, chronic prostatitis, chronic low back pain with

---

[36]Hydrochlorothiazide is used to treat high blood pressure. Medline Plus (last revised Oct. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682571.html>.

possible right radicular systems, possible osteoarthritis of the right knee, possible bilateral carpal tunnel syndrome, and atypical chest pain. Dr. Burchett opined that plaintiff would be limited in activities that required bending, lifting or prolonged riding in a car. (Tr. 426-32.)

On March 21, 2007, plaintiff returned to Drs. Granada/ Kulkarni's office and reported that he had numbness in the fingers of his left hand and pain in his chest. Plaintiff also reported numbness and tingling in his lower legs. Plaintiff reported his back pain to be at a level six on a scale of one to ten. Plaintiff was diagnosed with chronic low back pain with radiculopathy, for which plaintiff was instructed to switch his medication to Lyrica. Plaintiff was also diagnosed with GERD and was instructed to increase his dosage of Zantac. Plaintiff was instructed to continue with Trazodone for insomnia. Nerve conduction studies and an EMG were ordered. (Tr. 489.)

On March 28, 2007, plaintiff underwent a consultative psychiatric evaluation for disability determinations. Plaintiff reported to Dr. Price Gholson that he experienced sleep and appetite problems, was easily irritated, had frequent crying spells, experienced a loss of interest in activities, felt depressed daily, was hopeless and helpless, had low energy, and had recent suicidal ideations. Plaintiff reported having been raised by alcoholic parents who were physically and mentally abusive.

Plaintiff reported having few friends or social contacts. Plaintiff reported not having been previously hospitalized for psychiatric reasons, but that he underwent counseling in 2006. Plaintiff reported having attempted suicide when he was twenty years of age. Plaintiff reported that he had been diagnosed with anxiety/depression and had not taken any medication for the condition since November 2006 other than Trazodone. Dr. Gholson noted plaintiff's health problems to include degenerative spine, colitis, bulging disc, prostatitis, ulcers, numbness in legs, and high blood pressure. Dr. Gholson noted plaintiff's appearance, affect and thought processes to be at or below average. The presence of compulsions and of obsessive thoughts was noted to be above average with depressive trends noted to be very high. Plaintiff's intellectual functioning was noted to be at or below average. Likewise, plaintiff's insight and judgment was noted to be at or below average. Dr. Gholson observed plaintiff to be highly anxious with poor attention and concentration. Plaintiff exhibited average verbal behavior. Upon conclusion of the evaluation, Dr. Gholson diagnosed plaintiff with major depressive disorder and post traumatic stress disorder, and assigned plaintiff a GAF score of 45. Dr. Gholson recommended "approval for access to health care." (Tr. 527-36.)

On April 6, 2007, Joan Singer, a consultant with disability determinations, completed a Psychiatric Review Technique

Form in which she opined that plaintiff's depression and anxiety disorder were not severe impairments. Ms. Singer also opined that such impairments resulted in mild limitations in plaintiff's ability to engage in activities of daily living, and resulted in no limitations in plaintiff's ability to maintain social functioning or to maintain concentration, persistence or pace. Ms. Singer opined that plaintiff experienced no episodes of decompensation of an extended duration. (Tr. 433-43.)

Plaintiff visited Dr. Robert Cagle on April 17, 2007. It was noted that plaintiff changed physicians, discussed difficulties with previous physicians, and was experiencing worsening pain. Review of systems was unremarkable. Dr. Cagle noted plaintiff's medical history to include colon polyps, degenerative arthritis, back pain, colitis, prostate issues, and anxiety. Dr. Cagle noted plaintiff's current medications to include Flomax, Hydrocodone,

Lopressor,[37] Lyrica,[38] Metformin,[39] Naprosyn,[40] Prevacid, Prevpac,[41] Ranitidine, Seroquel, Soma, and Xanax. Physical examination was normal. Plaintiff was diagnosed with benign hypertension, herniated lumbar disc, low back pain, neuropathy, peptic disease, and insomnia. Plaintiff's prescriptions for Hydrocodone, Lisinopril, Seroquel, and Soma were refilled. (Tr. 492-94.)

Plaintiff returned to Dr. Cagle on May 17, 2007, for medication refills. Review of systems and physical examination were unremarkable. Dr. Cagle refilled plaintiff's prescriptions for Flomax, Hydrocodone, Naprosyn, and Soma. An EMG and nerve conduction studies were ordered. (Tr. 495-98.)

Nerve conduction studies performed on June 12, 2007, showed moderate bilateral carpal tunnel syndrome, right greater than the left. The EMG yielded unremarkable results. (Tr. 514-

---

[37]Hydrochlorothiazide is marketed under the name Lopressor. See Medline Plus (last revised Oct. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682571.html>.

[38]Lyrica is used to relieve neuropathic pain caused by diabetes and/or shingles. Medline Plus (last revised Sept. 1, 2009)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a605045.html>.

[39]Metformin is used to treat type 2 diabetes. Medline Plus (last revised Apr. 15, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html>.

[40]Naproxen is marketed under the name Naprosyn. See Medline Plus (last revised May 16, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html>.

[41]Prevpac is used to treat and prevent the return of ulcers caused by the h-pylori bacteria. Medline Plus (last revised Dec. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601067.html>.

16.)

On June 15, 2007, plaintiff visited Dr. Cagle for medication refills and with complaints of left knee pain. Review of systems and physical examination were unchanged from the previous visit. Plaintiff was diagnosed with carpal tunnel syndrome, herniated lumbar disc, low back pain, wrist pain, knee joint pain, and anxiety/depression. Plaintiff's medications for Hydrocodone and Soma were refilled, and plaintiff was referred to neurosurgery. (Tr. 499-501.)

Plaintiff returned to Dr. Cagle on July 15, 2007, and complained of pain in his neck, left knee and left wrist on account of a fall the previous day. Plaintiff also complained of diarrhea. Review of systems and physical examination were unremarkable. Plaintiff's prescriptions for Hydrocodone, Lyrica, Soma, and Ranitidine were refilled. (Tr. 502-04.)

On August 13, 2007, plaintiff reported to Dr. Cagle that he experienced chest pain and tightness the previous day and that his wife reported that he passed out for one or two seconds. Physical examination showed tenderness along the left sternal border. A chest x-ray and EKG taken that same date were within normal limits. Laboratory tests were positive for the presence of h-pylori, and Prevpac was prescribed. Plaintiff was referred to Cardiology for a stress test, and plaintiff's other medications were refilled. (Tr. 505-07, 518, 522.)

A stress test performed August 23, 2007, showed mild fixed decreased activity at the anterior septal wall, but was otherwise within normal limits. (Tr. 525.)

Plaintiff returned to Dr. Cagle on September 13, 2007, for medication refills. Plaintiff reported his blood sugar level to be at 200. Physical examination was unchanged from the previous visit. Plaintiff was diagnosed with diabetes, insulin, uncontrolled; low back pain; and anxiety/depression. Plaintiff's prescriptions for Hydrocodone, Metformin, Prevacid, and Xanax were refilled. (Tr. 508-09.)

Plaintiff visited Dr. Cagle on October 12, 2007, and requested medication refills and something to help him sleep. Review of systems was unremarkable. Plaintiff's history of degenerative arthritis, hypertension, back pain, colitis, and anxiety was noted. Plaintiff was noted to demonstrate normal affect. Physical examination was normal. Plaintiff was diagnosed with diabetes, non-insulin controlled; benign hypertension; neuropathy; low back pain; and anxiety and depression. Plaintiff was prescribed Hydrocodone, Lopressor, Metformin, Seroquel, and Xanax. (Tr. 444-46.)

Plaintiff returned to Dr. Cagle on November 12, 2007, with complaints of symptoms related to viral enteritis. An injection of Phenergan was administered, and plaintiff's prescriptions for Hydrocodone, Metformin and Xanax were refilled.

(Tr. 447-49.)

Plaintiff returned to Dr. Cagle on December 12, 2007, for medication refills and with complaints of abdominal pain. Review of systems and physical examination were normal. A colonoscopy was ordered. Plaintiff was diagnosed with abdominal pain, anxiety/ depression, low back pain, and multiple joint pain. Plaintiff's previous medications were refilled. (Tr. 450-52.)

On January 28, 2008, plaintiff visited Dr. Cagle for medication refills. Plaintiff also complained of pain in his neck and shoulder which radiated into his left hand with associated tingling. Examination showed epigastric pain, soreness to the back of the neck, and tenderness about the left deltoid. An x-ray and MRI of the cervical spine were ordered. Plaintiff was diagnosed with neck pain, shoulder and joint pain, epigastric abdominal pain, herniated lumbar disc, low back pain, anxiety and depression, and carpal tunnel syndrome. Plaintiff's medications were refilled and plaintiff was given instruction as to daily exercise. (Tr. 453-55.)

Plaintiff returned to Dr. Cagle on February 10, 2008, for medication refills and for complaints related to an umbilical hernia. Examination was unchanged from the last visit. Plaintiff's medications were refilled and he was instructed to continue with his present care. (Tr. 456-58.)

Plaintiff returned to Dr. Cagle on March 10, 2008, for

medication refills. Examination was unchanged from the last visit. Plaintiff's medications were refilled and he was instructed to continue with his present care. (Tr. 459-61.)

On April 10, 2008, plaintiff reported to Dr. Cagle that he passed out the previous week and was experiencing chest pain and tingling in his left arm. Plaintiff also reported having low back pain with numbness in the right leg and tingling in the toes. Physical examination was unchanged from the previous visit. Dr. Cagle prescribed Hydrocodone, Metformin, Mobic,[42] Nitrostat,[43] Seroquel, and Xanax. A chest x-ray showed a cavitary nodule in the left hilum. The results of an EKG were normal. A CT of the spine was ordered and plaintiff was referred to Cardiology. Plaintiff was instructed to continue with his medications, and instruction as to daily exercise was given. (Tr. 462-64.)

Plaintiff visited the Pemiscot Primary Care Center (Pemiscot) on October 13, 2008, with complaints of depression. Plaintiff also reported having temper problems. It was noted that plaintiff was previously treated by Dr. Abbas and had been

---

[42]Mobic is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis, and is sometimes used to treat ankylosing spondylitis. Medline Plus (last reviewed Sept. 1, 2008)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html>.

[43]Nitrostat is nitroglycerin used to treat episodes of angina in people who have coronary artery disease. Medline Plus (last revised Aug. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601086.html>.

prescribed Wellbutrin, Ativan, Cymbalta, Lexapro, Celexa, Prozac,[44] Paxil,[45] Zoloft,[46] and Effexor in the past. Plaintiff's current medication was noted to be Seroquel. Plaintiff was noted to be focused, oriented and cooperative. Plaintiff's mood and affect were noted to be within normal limits. Plaintiff's memory, judgment, activity, and speech were within normal limits, as was plaintiff's thought process and content. Plaintiff had no suicidal or homicidal ideation, but reported feelings of depression. Plaintiff was diagnosed with major depressive disorder. (Tr. 549-50.)

Plaintiff returned to Pemiscot on October 29, November 14, and December 15, 2008. On each occasion, plaintiff was noted to be focused, oriented and cooperative. Plaintiff's mood and affect were noted to be within normal limits. Plaintiff's memory, judgment, activity, and speech were within normal limits, as was plaintiff's thought process and content. Plaintiff had no suicidal

---

[44]Prozac is used to treat depression, obsessive-compulsive disorder and panic attacks. Medline Plus (last revised June 15, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a689006.html>.

[45]Paxil is used to treat depression, panic disorder, social anxiety disorder, obsessive-compulsive disorder, generalized anxiety disorder, and post traumatic stress disorder. Medline Plus (last revised Apr. 15, 2011)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698032.html>.

[46]Zoloft is used to treat depression, obsessive-compulsive disorder, panic attacks, post traumatic stress disorder, and social anxiety disorder. Medline Plus (last revised Mar. 1, 2009) <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697048.html>.

or homicidal ideation, but reported feelings of depression. Plaintiff continued with the diagnosis of major depressive disorder. (Tr. 546-48.)

Plaintiff visited Dr. Timothy W. McPherson on November 11, 2008, with complaints of chronic low back pain. Plaintiff's past medical history was noted to include depression/anxiety, GERD, bipolar disorder, lipidemia, and hypertension. Plaintiff's current medication was noted to be Prilosec. Physical examination was unremarkable. Plaintiff was diagnosed with chronic obstructive pulmonary disease (COPD), chronic depression/anxiety, chronic bipolar disorder, hypertension, GERD, and back pain. Plaintiff was instructed to discontinue Mobic. Dr. McPherson noted that plaintiff's Xanax and Valium[47] would be refilled by his psychiatrist. Various diagnostic tests were ordered, and Dr. McPherson refilled plaintiff's prescriptions for Prilosec, Metoprolol,[48] Flomax, and Metformin. (Tr. 567-68.)

An abdominal aortic duplex scan performed on November 12, 2008, showed definite atherosclerosis and tortuosity of the abdominal aorta. Definite bladder retention was also noted. Further prostate evaluation was suggested inasmuch as BPH could not

---

[47]Valium is used to relieve anxiety, muscle spasms and seizures. Medline Plus (last reviewed Oct. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682047.html>.

[48]Metoprolol is used to treat high blood pressure. Medline Plus (last revised July 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682864.html>.

be ruled out.  (Tr. 579.)  An echocardiogram performed that same date showed mild concentric left ventricular hypertrophy (LVH), mild cardiomegaly, early chronic COPD, and borderline pulmonary hypertension.  (Tr. 578.)  Dr. Timothy W. McPherson diagnosed plaintiff with COPD and LVH.  (577.)  On that same date, Dr. McPherson also diagnosed plaintiff with chronic pain syndrome, chronic low back pain, chronic BPH, and type-2 diabetes mellitus. Lidoderm patch was prescribed.  (Tr. 566.)

Plaintiff returned to Dr. McPherson on December 10, 2008, who noted plaintiff's current medications to be Flomax and Metoprolol.  Plaintiff demonstrated shortness of breath, arthralgia and stiffness.  Physical examination was otherwise unremarkable. Plaintiff was prescribed Flomax, Metoprolol and Ultram, and plaintiff was referred to a pain clinic.  (Tr. 563-64.)

Plaintiff visited Dr. McPherson on January 14, 2009.  Dr. McPherson continued in his diagnoses of plaintiff and refilled his prescriptions for Tricor[49] and Ultram.  (Tr. 561-62.)  On February 12, 2009, plaintiff complained of low back pain.  Dr. McPherson prescribed Ultram and Fioricet.[50]  (Tr. 559-60.)

From January through April 2009, plaintiff visited

---

[49]Tricor is used to decrease the levels of fatty substances in the blood.  <u>Medline Plus</u> (last revised Mar. 1, 2010)<http:// www.nlm.nih.gov/medlineplus/druginfo/meds/a601052.html>.

[50]Fioricet is used to relieve mild to moderate pain.  <u>Medline Plus</u> (last reviewed Sept. 1, 2010)<http://www.nlm.nih.gov/ medlineplus/druginfo/meds/a601005.html>.

Pemiscot on four occasions. On each occasion, plaintiff was noted to be focused, oriented and cooperative. Plaintiff's mood and affect were noted to be within normal limits. Plaintiff's memory, judgment, activity, and speech were within normal limits, as was plaintiff's thought process and content. Plaintiff had no suicidal or homicidal ideation. No reported feelings of depression were noted. (Tr. 542-45.)

On April 15, 2009, Dr. McPherson refilled plaintiff's prescriptions for Ultram and Fioricet. (Tr. 557-58.)

On May 8, 2009, plaintiff visited Pemiscot and reported having feelings of depression. Plaintiff was noted to be focused, oriented and cooperative. Plaintiff's mood and affect were noted to be within normal limits. Plaintiff's memory, judgment, activity, and speech were within normal limits, as was plaintiff's thought process and content. Plaintiff had no suicidal or homicidal ideation. (Tr. 541.)

Plaintiff returned to Dr. McPherson on May 12, 2009, and complained of low back pain, edema of the lower extremities, cold feet, and bilateral numbness. (Tr. 555-56.) Arterial evaluation of the lower extremities performed that date showed:

> Mildly reduced pulsations and arterial flow in the left foot and left dorsalis pedis artery. Very small vessel, cannot rule out Raynaud's disease. Slightly reduced pulsation in the right foot. Atherosclerosis noted in the abdominal aorta, iliac, and all leg arteries as well as mild tortuosity. No significant

> narrowing or stenosis seen. Normal ankle-
> brachial indexes, pulse volume recordings,
> segmental pressures, and pulsations noted.
> Definite venous enlargement, mild lower leg
> edema, and venous stasis noted. No DVT seen.

(Tr. 574.)

A prostate ultrasound performed that same date showed definite BPH with prostate calcifications. Definite urinary bladder retention was noted. (Tr. 575.) Dr. McPherson diagnosed plaintiff with low back pain, BPH, pain syndrome, cephalgia, peripheral edema, and nocturia. Plaintiff's prescriptions for Fioricet and Ultram were refilled. (Tr. 556.)

In June and July 2009, plaintiff visited Pemiscot on two occasions. On each occasion, plaintiff was noted to be focused, oriented and cooperative. Plaintiff's mood and affect were noted to be within normal limits. Plaintiff's memory, judgment, activity, and speech were within normal limits, as was plaintiff's thought process and content. Plaintiff had no suicidal or homicidal ideation. No reported feelings of depression were noted. Plaintiff was continued with the diagnosis of major depressive disorder. (Tr. 539-40.)

Plaintiff returned to Dr. McPherson on July 10, 2009, with complaints of low back pain. Physical examination was unremarkable. Dr. McPherson continued in his diagnoses of plaintiff and refilled his prescriptions for Ultram and Fioricet. Dr. McPherson also prescribed Motrin for plaintiff. (Tr. 553-54.)

## IV. The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since January 10, 2007, the date of plaintiff's application for benefits. The ALJ found plaintiff's degenerative disc disease of the thoracic spine, prostatitis, colitis, ileitis, peptic ulcer disease, hypertension, and diabetes mellitus to constitute a severe combination of impairments, but that plaintiff did not have an impairment or combination of impairments which met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found plaintiff to have the residual functional capacity (RFC) to perform light work, except for lifting or carrying more than twenty pounds occasionally and ten pounds frequently; standing or walking more than six hours in an eight-hour workday with normal work breaks; and stooping or crouching more than occasionally. The ALJ found plaintiff unable to perform his past relevant work. Considering plaintiff's age, education, work experience, and RFC, the ALJ determined that the Medical-Vocational Guidelines supported a finding that there existed a significant number of jobs in the national economy that plaintiff could perform, and that plaintiff's additional non-exertional postural limitations had little or no effect on the occupational base of unskilled light work. The ALJ therefore found plaintiff not to be under a disability at any time since January 10, 2007. (Tr. 8-16.)

## V. Discussion

To be eligible for Social Security Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. <u>See</u> 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140–42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of

impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." <u>Id.</u> (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

<u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. <u>Coleman</u>, 498 F.3d at 770; <u>Warburton v. Apfel</u>, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. <u>Pearsall</u>, 274 F.3d at 1217 (citing <u>Young v. Apfel</u>, 221 F.3d 1065, 1068 (8th Cir.

2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff claims that the ALJ erred in his decision denying plaintiff benefits inasmuch as the ALJ failed to accord substantial weight to the opinion of plaintiff's treating physician, Dr. Gholson. Plaintiff also claims that the failure of the ALJ to properly consider Dr. Gholson's opinion necessarily precluded consideration of plaintiff's non-exertional mental impairment, which resulted in the ALJ's flawed reliance on the Medical-Vocational Guidelines to find plaintiff not disabled.

A.   Opinion of Dr. Gholson

Plaintiff claims that the ALJ failed to accord substantial weight to the opinion of Dr. Gholson, including the GAF score of 45 Dr. Gholson assigned to plaintiff in March 2007. Plaintiff describes Dr. Gholson as a treating physician and argues that the opinions of treating physicians are to be given great weight.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, nontreating sources and nonexamining

sources. See 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). Contrary to plaintiff's argument here, Dr. Gholson is not plaintiff's treating physician. A "treating source" is defined as a claimant's "'own physician, psychologist, or other acceptable medical source'" who has provided the claimant "'with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with'" the claimant. Owen v. Astrue, 551 F.3d 792, 798-99 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)) (emphasis added). The record does not show Dr. Gholson to have had an ongoing treatment relationship with plaintiff. Instead, Dr. Gholson evaluated plaintiff on one occasion as a consulting physician for disability determinations. The ALJ therefore did not err in failing to accord substantial weight to Dr. Gholson's opinion as a treating physician.

A review of the decision shows the ALJ to have considered the opinion of Dr. Gholson as a nontreating, examining source and to have determined not to accord any weight to Dr. Gholson's opinion. In accordance with the Regulations, the ALJ explained why he determined to accord no weight to Dr. Gholson's opinion, and specifically, because such opinion was based on a one-time evaluation of plaintiff and was inconsistent with the treatment notes of plaintiff's treating physician, Dr. Cagle, who consistently found plaintiff's mental status examinations to be unremarkable:

Dr. Cagle, the claimant's treating primary care physician since April 2007, has diagnosed the claimant with anxiety and depression treated with prescribed psychotropic medication. Dr. Cagle's treatment records indicate unremarkable mental status examinations, indicating the claimant fully oriented with no evidence of psychosis with normal affect and intact memory.

. . . [H]is symptoms have been treated and apparently well controlled by his treating primary care physician, Dr. Cagle, with prescribed psychotropic medication. Mental status examinations have been essentially unremarkable. . . .

. . .

No weight is extended to the GAF opinion of the examining psychologist, Dr. Gholson, who indicated a GAF of 45, representing significant, or more than mild, mental functional limitations. The favorable assessment of examining source is based on a one-time examination and is inconsistent with the objective medical evidence of record and unsupported by the treating physician's subsequent mental status examinations.

(Tr. 11.) (Internal citations to the record omitted.)

Substantial evidence on the record as a whole supports this determination.

In addition, a review of the evidence obtained from Pemiscot and submitted to the Appeals Council subsequent to the ALJ's decision likewise demonstrates plaintiff's mental status examinations to continually be unremarkable. Indeed, despite plaintiff's occasional feelings of depression, he nevertheless

continually demonstrated focus, orientation and cooperation; normal mood and affect; normal memory, judgment, activity, and speech; and normal thought processes and content. (Tr. 538-50.) Although this evidence was not before the ALJ, it nevertheless further supports the ALJ's determination to discount Dr. Gholson's opinion. The evidence obtained from plaintiff's treating physicians is contradicted only by Dr. Gholson's opinion. As such, it was not error for the ALJ to accord little or no weight to this consulting physician's opinion. See Cox v. Barnhart, 345 F.3d 606, 609 (8th Cir. 2003).

Regardless, to the extent there exist inconsistencies in the evidence regarding plaintiff's limitations, the undersigned notes that the resolution of an evidentiary conflict between the opinions of one-time consultants and treating physicians is for the Commissioner, and not the Court, to make. Wildman v. Astrue, 596 F.3d 959, 969 n.4 (8th Cir. 2010); Wagner v. Astrue, 499 F.3d 842, 848-49 (8th Cir. 2007). See also Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000); Driggins v. Bowen, 791 F.2d 121, 124 (8th Cir. 1986); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). Substantial evidence supports the ALJ's determination not to accord any weight to Dr. Gholson's opinion and to accord greater weight to the evidence obtained from plaintiff's treating physician, Dr. Cagle. Because substantial evidence supports this decision, plaintiff's claim that the ALJ erred in failing to accord

significant weight to Dr. Gholson's opinion must fail.

B.    Medical-Vocational Guidelines

        Plaintiff argues that because the ALJ failed to properly
credit Dr. Gholson's opinion, the ALJ failed to consider
plaintiff's non-exertional mental impairment which resulted in the
ALJ's flawed reliance on the Medical-Vocational Guidelines to find
plaintiff not disabled.

        As an initial matter, as discussed supra at Section V.A,
the ALJ did not err in discounting the opinion of Dr. Gholson.  For
the reasons discussed below, the ALJ likewise did not err in
relying on the Medical-Vocational Guidelines with regard to
plaintiff's mental impairment.

        At step two of the sequential analysis, the ALJ
thoroughly discussed the relevant evidence of record and determined
plaintiff's mental health condition not to constitute a severe
impairment.  (Tr. 10-12.)  In so doing, the ALJ properly underwent
the additional sequential process for evaluating mental
impairments, see 20 C.F.R. § 416.920a, and concluded that
plaintiff's limitations in the various domains of functioning
failed to establish that his mental impairment constituted a severe
impairment.  (Tr. 12.)  Other than reasserting his argument
regarding Dr. Gholson's opinion, plaintiff does not challenge this
determination.  Where an ALJ properly determines that a claimant's
mental impairment is non-severe, it is appropriate for the ALJ to

rely upon the Guidelines to reach a conclusion regarding whether the claimant is disabled or not disabled. See McGeorge v. Barnhart, 321 F.3d 766, 768-69 (8th Cir. 2003). No evidence or argument before the Court demonstrates that the ALJ erred in his determination that plaintiff's mental impairment was not severe. Accordingly, plaintiff's argument that his non-exertional mental impairment precluded the ALJ's reliance on the Medical-Vocational Guidelines must fail.

## VI. Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination is supported by substantial evidence on the record as a whole and plaintiff's claims of error should be denied. Inasmuch as there is substantial evidence to support the decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, the Commissioner's determination that plaintiff is not disabled should be affirmed.

Therefore,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that plaintiff's Complaint be dismissed with prejudice.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **August 29, 2011.** Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


_____
UNITED STATES MAGISTRATE JUDGE


Dated this _15th_ day of August, 2011.